UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT PIKEVILLE

CIVIL ACTION NO. 08-09-ART

KALTON J. ADKINS,                                              PETITIONER,

V.                      **MAGISTRATE JUDGE'S REPORT**
                        **AND RECOMMENDATION**

JOHN MOTLEY,
Warden, Eastern Kentucky Correctional Complex,                 RESPONDENT.

I. INTRODUCTION

Petitioner, Kalton J. Adkins, [hereinafter "Petitioner," or "Appellant"] was convicted in Pike Circuit Court of Murder, First Degree Robbery, and First Degree Burglary; he was sentenced to a total of seventy (70) years incarceration. The Petitioner's conviction was unanimously upheld by the Kentucky Supreme Court in a published opinion dated January 23, 2003. Currently incarcerated at the Eastern Kentucky Correctional Complex in West Liberty, Kentucky, the Petitioner has challenged his conviction by filing herein a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. [R. 1].

The parties have fully briefed the relevant issues and the Petition is now ripe for review. Consistent with local practice, this matter has been referred to the undersigned for preparation of a report and recommendation pursuant to 28 U.S.C. § 636 (B)(1)(B).  For the reasons stated herein, the undersigned recommends that Kalton J. Adkins' Petition for Writ of Habeas Corpus [R. 1] be DENIED.

## II. FACTUAL & PROCEDURAL BACKGROUND

This matter arises from the following facts, which were summarized by the Supreme Court

in a published opinion, Adkins v. Commonwealth, 96 S.W.3d 779 (Ky. 2003):[1]

> On November 6, 1999, Richard "Bebay" Roberts, age sixty-eight, was beaten to death in his home on Rob Damron Road near highway 1469 (Penny Road) in Pike County, Kentucky. His daughter, son-in-law, and grandchildren discovered the body the next morning. The body was found lying near the front door clad only in underwear. Missing from the residence were a .410 pump shotgun and the victim's wallet, in which he was known to keep large sums of money. There were blood stains on the front porch and steps and smeared blood stains leading from the door to the victim's body, indicating that the body had been pulled away from the door so that the door could be shut. There was no evidence of forced entry.

Id. at 782-83. The victim was well-acquainted with the Petitioner, having cohabited with the

Petitioner's mother some twenty years prior to his death. Id. at 783. Apparently the victim and the

Petitioner did not have any significant contact from that time until a few months prior to the victim's

death. Id. Sometime before October of 1999, the Petitioner was attempting to rent a mobile home

for himself and his girlfriend, Ruth Caudill, and he tried to rent some property from the victim. The

victim refused to rent to the Petitioner. In October of 1999, the Petitioner returned to the victim's

home and sold him some beefsteaks. Id. A few weeks later, the Petitioner attempted to sell more

meat to the victim, who refused to purchase any. Id. Because of the incidents involving the meat, the

victim, who had referred to the Petitioner "by his nickname, 'Bo,' began referring to him as 'the

meat man.'" Id.

The Kentucky Supreme Court summarized the time leading up to the crime as follows:

---

[1] "A federal court is to apply a presumption of correctness to state court findings of fact for habeas corpus purposes unless clear and convincing evidence is offered to rebut this presumption." Benge v. Johnson, 474 F.3d 236, 241 (6th Cir. 2007). As the Petitioner has offered no evidence to rebut the presumption, the undersigned presumes the factual findings made by the Kentucky courts are accurate.

On the night of October 30, 1999, Appellant came to Roberts's residence wanting to pawn a woman's ring. Roberts gave Appellant ten dollars and placed the ring in a small compartment of a wall clock for safekeeping. The ring was found in the compartment after Roberts's death. (Appellant's grandmother, Artie Adkins, testified that the ring belonged to her and that she had discovered it was missing shortly after Appellant and Caudill had paid a visit to her residence.) A ratchet from a military-style brass belt buckle was found on the floor near Roberts's body.

Larry Branham, a neighbor and friend of Roberts, testified that he visited with Roberts on the afternoon of November 6, 1999, and that Roberts was "expecting the meat man," whom Branham identified as "Bo Adkins." Upon receiving information of Appellant's frequent visits to Roberts's residence and that Roberts was expecting him on the day of the murder, and upon learning that Appellant lived with Ruth Caudill and that Caudill owned a blue Ford Mustang, Kentucky State Police Detective Sean Welch obtained the registration number of Caudill's vehicle and began searching for Appellant.

Id. (internal footnote omitted). Ruth Caudill, the Petitioner's girlfriend, testified that on the day of the murder, the Petitioner said that he was going to find a friend that owed him some money, and he left in Ms. Caudill's Ford Mustang. She further testified that "she slept for two or three hours while [Petitioner] was gone. When [Petitioner] returned, he had with him an unspecified quantity of cocaine." Id. at 784. On the morning after the murder, the Petitioner and Ms. Caudill loaded all of their belongings into Ms. Caudill's blue Ford Mustang and left the trailer they had been living in, near Virgie, Kentucky, and drove to a motel in Pikeville. Id. The motel manager testified that the Petitioner paid for the room with a fifty dollar bill.[2] Id.

As noted above, after receiving information regarding the Petitioner and the make-and-model of Ms. Caudill's vehicle, Detective Welch and Detective Lee Weddington began searching for the

---

[2] Ms. Caudill testified that she did not have a job, nor did she have any money. They had been allowed to live in the mobile home without rent, so long as they "fixed it up." At the time they left, the mobile home had no running water, and though it had electricity there was only one light bulb. The Petitioner did not have steady employment, and apparently worked "off and on" at a body shop. Id.

Petitioner and the blue Ford Mustang. After finding that the Petitioner had abandoned the mobile

home, the detectives began checking local motels, and located Caudill's blue Ford Mustang in the

parking lot of the Colley Motel. Id. Detective Welch then observed an individual matching the

Petitioner's description, later determined to be the Petitioner, walking away from the blue Ford

Mustang. Id.

> When Welch approached Appellant and asked him his name, Appellant responded, "Bo." When Welch asked for his last name, Appellant responded, "Jones." When Welch asked him where he lived, Appellant responded, "Michigan." Appellant also told Welch that he was "with his girlfriend, Ruth." Confident that he was, in fact, talking to Bo Adkins, Welch asked Appellant if he could produce any identification. Appellant immediately became agitated, started shouting profanities, and loudly accused Welch and police officers in general of harassing him. Because of the late hour and the fact that there were other patrons asleep in the motel, Welch ordered Appellant to lower his voice. Appellant then told Welch that his identification was in his motel room and turned as if to walk in that direction. Welch noticed Appellant looking around as if searching for an escape route. Welch asked Appellant if he was armed and reached out to frisk Appellant's clothing for weapons. Appellant immediately started running toward the front of the motel where Welch and Weddington caught and subdued him. As the officers attempted to handcuff him, Appellant resisted their efforts and continued to shout profanities. Eventually, the officers succeeded in handcuffing Appellant, effectively placing him under arrest.

> Welch charged Appellant with disorderly conduct and resisting arrest and transported him to state police headquarters in Pikeville. After being advised of his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed..2d 694 (1966), Appellant gave Welch a statement about his activities on November 6th and 7th. He also executed a written consent to search the Colley Motel room where he and Caudill had been staying. Caudill also consented to a search of both the room and the blue Mustang.

Adkins, 96 S.W.3d at 784-85. A subsequent search of the room and the vehicle uncovered cocaine

and drug paraphernalia, as well as blue jeans which were stained with blood. Id. at 785. The blood

stains were tested and DNA showed that the blood belonged to Roberts. Id. The police also located

a military-style brass buckle which was missing the ratchet; later testing could not confirm that the

4

ratchet found at the scene was from the buckle found in the Mustang, though both pieces were similarly bent and "appeared to be splattered with dried blood." Id.

In the statement given to police on November 7, the Petitioner did not mention any involvement in Roberts' death, but stated that he had been at home and in Wheelwright, Kentucky, attempting to negotiate the purchase of a black Ford Mustang. Id. When questioned by Det. Welch about whether a blue Ford Mustang could have been seen on Roberts' property on the night of the murder, Petitioner stated that he had turned his car around in the driveway in order to avoid a police officer;[3] the Petitioner claimed he was driving on a suspended license and was afraid of being stopped by the police. Id. He also stated that he ran from Det. Welch at the motel because he thought the police were after him "because of drugs." Id. Petitioner apparently then asked to speak to an attorney, and the interview was terminated. Id.

On November 8, 1999, the Petitioner's brother, Ronnie Adkison, visited him in the Pike County Jail. Mr. Adkison was an employee of the Department for Juvenile Justice. Id. at 790. Prior to speaking with the Petitioner, Mr. Adkison approached Det. Welch and told him that "intended to talk to [Petitioner] and, if the murder accusation proved true, urge his brother to confess and seek a favorable plea bargain." Id. Mr. Adkison asked whether he could inform Det. Welch of the results of any conversations he had with his brother. Det. Welch "stated that he would listen to any information Adkison provided, but stressed that Adkison was under no obligation to report anything to him." Id. During the conversation between Petitioner and Mr. Adkison, Mr. Adkison encouraged his brother to take responsibility for his actions. In response, the Petitioner stated "I might have done

---

[3] The question about the blue Ford Mustang on Roberts' property was described by the Kentucky Supreme Court as "a ruse," since Det. Welch had no information at that time indicating that a blue Ford Mustang had been seen on the property on the night of November 6. Id.

it," and "if I done it, I deserve to die." Id. He also stated that he didn't want Adkison to "hold it

against Ruth." Id. Mr. Adkison informed Det. Welch of these statements. Id.

The Petitioner was charged, in Pike Circuit Court Indictment 99-cr-326, with Murder, First

Degree Robbery and First Degree Burglary. Id. at 782. In October, 2000, the Petitioner was tried by

a jury and was convicted. Further relevant facts regarding alleged errors at trial will be discussed

infra. On January 24, 2001, the Petitioner was sentenced by the Pike Circuit Court to fifty (50) years

for Murder and twenty (20) years for First Degree Robbery, the sentences to run consecutively. [R.

10, Appx. at A1-A3]. The Petitioner was also sentenced to twenty (20) years for First Degree

Burglary, to run concurrently to the other two sentences. [Id.]. Following his conviction, the

Petitioner appealed to the Kentucky Supreme Court as a matter of right. Adkins, 96 S.W.3d at 782.

Petitioner claimed that the trial court erred by:

> (1) overruling his motion for a directed verdict of acquittal; (2) failing to suppress
> evidence obtained as a result of an investigatory stop and frisk; (3) permitting a
> witness to testify for the Commonwealth knowing that she would invoke her Fifth
> Amendment privilege against self-incrimination on cross-examination; (4) admitting
> incriminating statements made by Appellant to his brother after he had invoked his
> Miranda rights; (5) permitting the Commonwealth to introduce evidence of his illegal
> drug activity and other bad acts in violation of KRE 404(b); (6) permitting the
> Commonwealth to introduce inflammatory evidence in an abuse of discretion under
> KRE 403; and (7) failing to dismiss a juror after being informed that she may have
> given false information during voir dire.

Id. The Kentucky Supreme Court unanimously affirmed the Petitioner's conviction in an opinion

released on January 23, 2003.

Following his unsuccessful appeal to the Kentucky Supreme Court, the Petitioner filed a

motion to vacate the judgment pursuant to Kentucky Rule of Criminal Procedure 11.42. An

evidentiary hearing on the motion was held before the Pike Circuit Court on September 30, 2005.

[R. 10, Appx. at A130]. The Circuit Court denied the RCr 11.42 motion in an order dated October 24, 2005. [Id. at A130-A134]. Petitioner appealed to the Kentucky Court of Appeals, which affirmed Judge Combs' denial of the RCr 11.42 motion. [Id. at A184-A196].

On January 14, 2008, the Petitioner filed his Petition for Writ of Habeas Corpus. [R. 1]. The Petitioner alleged therein thirteen grounds for relief. [R. 1 at 5-13]. The Respondent, appearing through counsel, filed an Answer to the Petition on April 11, 2008, stating that the Petitioner was not entitled to the relief sought. [R. 10]. The matter now being fully briefed, it is ripe for adjudication.

## III. STANDARD OF REVIEW

The Petitioner brings this action under the provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), which governs cases where an individual petitions for a writ of habeas corpus based on a conviction in state court. AEDPA provides that a writ of habeas corpus:

> ...on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The system set forth in AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693-94 (2002).

Under § 2254(d)(1), this Court may grant a writ of habeas corpus under either the "contrary to" or "unreasonable application" clauses. In order to be "contrary to" federal law, the state court result must be "substantially different" from Supreme Court precedent. Williams v. Taylor, 529 U.S. 362, 405, (2000). A state court decision may also be "contrary to" federal law "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." Id. at 406. A writ may be granted under the "unreasonable application" clause "if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. When determining whether a state court's decision was reasonable, the courts use an objective standard. Gillard v. Mitchell, 445 F.3d 883 (6th Cir. 2006), citing Williams at 409-11.

AEDPA permits references to lower federal court decisions to "determine whether a legal principle or right had been clearly established by the Supreme Court." Id., citing Hill v. Hofbauer, 337 F.3d 706, 716 (6th Cir. 2003). However, when the Supreme Court has not directly addressed an issue, a court reviewing a habeas petition "may not look to lower federal court decisions in deciding whether the state decision is contrary to, or an unreasonable application of, clearly established federal law." Smith v. Stegall, 385 F.3d 993, 998 (6th Cir. 2004).

AEDPA also provides the relevant standard of review for factual determinations made by state courts:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). In addition to being entitled to a presumption of correctness, "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)[.]" Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

## V. ANALYSIS

As an initial matter, a state prisoner must ordinarily exhaust all available state remedies prior to seeking a federal writ of habeas corpus. 28 U.S.C. § 2254(b), (c). The Petitioner bears the burden of proving that he exhausted his state remedies. Caver v. Straub, 349 F.3d 340 (6th Cir. 2003). The exhaustion requirement will be satisfied where a petitioner has given the highest state court a "full and fair opportunity to rule on the petitioner's claims." Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994). The Petitioner claims that all grounds herein have been properly exhausted, either on direct appeal, or in his RCr 11.42 appeal. [R. 1 at 5-13]. The Respondent acknowledges that "all grounds in this petition were properly presented on appeal or during post conviction proceedings." [R. 10 at 1]. The Court concurs, and finds that the Petitioner has met his burden of proving that he has exhausted his state remedies.

As all grounds herein have been fairly presented to the state courts, the undersigned will proceed to address the merits of the Petition. The Petitioner enumerated thirteen grounds for issuance of a writ of habeas corpus. [R. 1 at 5-13]. These grounds shall be discussed separately.

## A.      Confrontation

The Petitioner's first argument is that his Sixth Amendment right to a fair trial was violated when the trial court permitted a witness to testify, knowing that she would invoke her Fifth

9

Amendment right against self-incrimination. [R. 1, Memo. at 7-11].

Ruth Caudill was the Petitioner's girlfriend at the time of the murder of Mr. Roberts. [R. 1, Memo. at 7]. At trial, the prosecution called Ms. Caudill to the stand; at the time, Ms. Caudill was facing drug-related charges based on the items found in the motel room she had shared with the Petitioner. Adkins, 96 S.W.3d at 788. Caudill's attorney informed the trial court that Ms. Caudill "intended to invoke her Fifth Amendment privilege against self-incrimination if asked, in particular, about any activity relative to her pending drug charges." Id. Petitioner's counsel then moved to suppress all testimony from Caudill, a motion which the trial judge overruled. Ms. Caudill did not assert her Fifth Amendment privilege in response to any questions asked on direction examination. Id. Petitioner's counsel then asked her approximately five questions, then asked her if she had "used some cocaine" on the morning of the murder. Id. Ms. Caudill asserted her Fifth Amendment privilege and the trial judge adjourned the trial for the afternoon. The next day defense counsel stated: "Because of the problems we experienced yesterday, in reviewing the testimony and talking about what kind of effect it is going to have if we continue to ask her questions that she takes the Fifth on, we've elected that we're not going to continue to cross-examine Ms. Caudill at this time." Id.

The Kentucky Supreme Court found that the trial court did not err by permitting Ms. Caudill to testify. Id. at 788-790. The court stated as follows:

> ...both our own and federal case law reveals only one circumstance in which a witness should *a priori* be precluded from taking the stand, *i.e.,* when the witness is called "for the *purpose* of extracting from him a claim of privilege against self-incrimination," [Commonwealth v. Brown, 619 S.W.2d 699, 704 (Ky. 1981)] (emphasis added), or so that the prosecutor could introduce as a prior inconsistent statement his prior out-of-court statement inculpating the defendant. Id. at 703-04; Douglas v. Alabama, 380 U.S. 415, 416-20, 85 S. Ct. 1074, 1075-77, 13 L.Ed.2d 934

(1965).

> In contrast, a witness who, as here, will testify as to some matters but not as to others should ordinarily be allowed to take the stand. Combs v. Commonwealth, Ky., 74 S.W.3d 738, 742-43, 745 (2002) (noting that trial court should not have "treated the witness's invocation of the privilege against self-incrimination as an 'all-or-nothing' decision that barred the witness from testifying at all."). If the prosecution witness refuses to answer questions on cross-examination, the defendant's proper remedy is a motion to strike all or part of the witness's direct testimony. See Combs, *supra*, at 744; ...

Adkins, 96 S.W.3d at 789. The Petitioner argues that this finding contravenes clearly established federal law, and that the trial court's decision to let Ms. Caudill testify violated the Petitioner's Sixth Amendment rights. [R. 1, Memo. at 7-11]. The Commonwealth responds that the trial court did not err by allowing Ms. Caudill to testify, and that the Kentucky Supreme Court's conclusion "was not contrary to or an unreasonable application of clearly established United States Supreme Court precedent." [R. 10 at 9].

When a witness properly invokes her Fifth Amendment privilege against self-incrimination, "the question of whether to strike the witness' direct testimony turns on whether the defendants' inability to complete their inquiry created a 'substantial danger of prejudice by depriving [them] of the ability to test the truth of the witness' direct testimony." United States v. Gullett, 713 F.2d 1203, 1208 (6th Cir. 1983) *citing* Fountain v. United States, 384 F.2d 624, 628 (5th Cir. 1967). Where a witness' assertion of the privilege is directly related to elements of the crime, the risk of prejudice is highly elevated, and the court should more readily strike the witness' direct testimony. However, when the witness asserts the privilege regarding collateral matters, courts are far less likely to find prejudice, and to strike the witness' direct testimony. See Gullett, 713 F.2d at 1209.

In the present case, the Petitioner claims that Ms. Caudill's invocation of her Fifth

11

Amendment privileges prevented the Petitioner "from placing facts before the jury from which bias, prejudice and lack of credibility of Ruth Caudill may have been inferred." [R. 1, Memo. at 11]. The Petitioner fails to identify how cross-examining Ms. Caudill regarding her drug use would reveal either bias or prejudice against the Petitioner. The use of illegal substances, even on the day of the murder, is an issue relevant to Ms. Caudill's credibility as a witness. See Adkins, 96 S.W.3d at 790. In analyzing whether a witness' testimony should be struck upon her invocation of the privilege against self-incrimination, a witness' credibility is generally considered to be a collateral matter, and the testimony should be permitted. See e.g., United States v. Stephens, 492 U.S. 1367, 1374-75 (6th Cir. 1974);  United States v. Zapata, 871 F.2d 616, 624 (7th Cir. 1989). As noted by the Kentucky Supreme Court, in the present case, "there was not even a motion to strike. Thus, the only issue preserved for appeal is *whether Caudill should have been prevented from testifying at all*." Adkins, 96 S.W.3d at 789 (emphasis added). No clearly established federal law requires a trial court to refuse to let a witness testify merely because they assert Fifth Amendment privilege as to a question regarding their credibility.

The Kentucky Supreme Court found that the trial judge did not err by permitting Ms. Caudill to testify. This finding should not be disturbed, as it is neither contrary to, nor an unreasonable application of, clearly established federal law.

**B.    Juror Conflict**

The Petitioner's second argument is that his constitutional right to a fair trial was violated when the trial court refused to excuse a juror who had a "possible undisclosed prior relationship with the victim's daughter." [R. 1, Memo. at 12].

During voir dire, Juror 66 indicated that she was a neighbor of the victim, and had gone to

school with the victim's daughter. She also indicated that she knew some of the witnesses in the case. Adkins, 96 S.W.3d 795. At the close of the evidence, Petitioner's counsel informed the trial court that Juror 66 did not disclose the full nature of her relationship with the victim's daughter; according to counsel, the children of Juror 66 and the victim's daughter played on the same ball team. Id. Counsel further stated that the juror and the victim's daughter were "friends." Id.

The Kentucky Supreme Court held that the trial court did not err by refusing to excuse Juror 66:

> To obtain a new trial because of juror mendacity, "a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984); see also Anderson v. Commonwealth, Ky., 864 S.W.2d 909, 911-12 (1993) (reversing when juror "concealed vital information on voir dire, information which may have justified a challenge for cause in and of itself on grounds of implied bias").

Adkins, 96 S.W.3d 796. The Kentucky Supreme Court noted that the Petitioner failed to produce evidence to substantiate the allegations regarding Juror 66, and also failed to show any "material question that the juror failed to answer honestly." Id. The court held that "the trial judge did not abuse his discretion by refusing to excuse Juror 66 at the close of the evidence." Id.

The Petitioner's argument is that the Kentucky courts erred by refusing to excuse the juror when the "prior undisclosed relationship with the victim's daughter" was exposed. [R. 1, Memo. at 12]. The Commonwealth counters by stating that the Kentucky Supreme Court correctly applied controlling Supreme Court precedent, and that the Petitioner's argument does not provide a basis for relief. [R. 10 at 10-12].

As an initial matter, a federal district court sitting in habeas review must give deference to

the factual findings of the state courts. In the present case, the Kentucky Supreme Court made factual findings that there was no evidence to support the Petitioner's allegations that Juror 66 and the victim's daughter were "friends." Adkins, 96 S.W.3d at 796. Furthermore, the court found no material questions that Juror 66 failed to answer honestly. Id. These findings are accorded a presumption of correctness. Johnson v. Luoma, 425 F.3d 318, 324 (6th Cir. 2005). The Petitioner has not rebutted this presumption, and the Court will, therefore, adopt the factual findings of the Kentucky Supreme Court.

"The standard governing whether a defendant is entitled to a new trial based on juror responses to voir dire questions is set forth in McDonough Power Equipment, Inc. v. Greenwood, [464 U.S. 548] (1984)." Johnson, 425 F.3d at 325. In order to obtain a new trial as a result of a juror's inaccurate response to voir dire questions, the Petitioner must show two things: (1) "a juror failed to answer honestly a material question on voir dire," and (2) "that a correct response would have provided a valid basis for a challenge for cause." McDonough Power Equip., 464 U.S. at 556. The Petitioner cannot show that the Kentucky Supreme Court's decision was either contrary to, or an unreasonable application of, this clearly established federal law.

The Kentucky Supreme Court engaged in the type of analysis set forth in McDonough Power, and made a finding that there was no evidence of a material question that Juror 66 failed to answer honestly during voir dire, nor was there any evidence to substantiate the allegations that Juror 66 and the victim's daughter were friends.[4] Adkins, 96 S.W.3d at 796. The Kentucky Supreme Court's

---

[4] Furthermore, the trial court was not obligated to conduct an independent investigation based on the unsubstantiated allegations made by Petitioner's counsel. "The Sixth Amendment does not obligate state trial courts to investigate every allegation of bias or juror misconduct." Williams v. Bagley, 380 F.3d 932, 949 (6th Cir. 2004) citing Mu'Min v. Virginia, 500 U.S. 415, 427 (1991).

14

decision correctly identified the controlling federal precedent, and its application of the factors set forth in McDonough Power was neither contrary to, nor an unreasonable application of, clearly established federal law.

## C.      Miranda Violation

As noted in the factual section *supra*, the Petitioner's brother, Ronnie Adkison, visited him in jail the day after his arrest. Adkins, 96 S.W.3d at 790. Mr. Adkison had made the police aware that he was going to ask his brother about the crime, and "if the murder accusation proved true, urge his brother to confess and seek a favorable plea bargain." Id. Kentucky State Police Detective Welch told Mr. Adkison "that he would listen to any information Adkison provided, but stressed that Adkison was under no obligation to report anything to him." Id. During the conversation between Petitioner and Mr. Adkison, Mr. Adkison encouraged his brother to take responsibility for his actions. In response, the Petitioner stated "I might have done it," and "if I done it, I deserve to die." Id. He also stated that he didn't want Adkison to "hold it against Ruth." Id. Mr. Adkison informed Det. Welch of these statements. Id.

The Petitioner argues that the statements he made to his brother should have been suppressed, as their admission was barred by Miranda v. Arizona, 384 U.S. 436 (1966). [R. 1, Memo. at 17-20]. Specifically, the Respondent contends that the admission of the statements was not barred by Miranda, and thus their admission did not violate the Petitioner's Fifth or Sixth Amendment rights. [R. 10 at 12]. The Respondent argues that  Miranda is inapplicable, as Mr. Adkison was not acting as an agent of the police when he spoke with his brother. [Id.].

The Kentucky Supreme Court held that Mr. Adkison's conversation with the Petitioner, and any subsequent use of the conversation, did not violate Miranda and its progeny. Adkins, 96 S.W.3d

at 790-92. The court correctly identified the situations where private conduct could violate <u>Miranda</u>, and found that neither situation applied.[5] Most importantly, the court found that "Adkison's expressed goals were divorced from any law enforcement purpose. His motive was to protect his family's reputation, encourage his brother to live up to the values they had been taught, and help his brother obtain a favorable plea bargain." <u>Adkins</u>, 96 S.W.3d at 791. The trial judge, and the Kentucky Supreme Court, both found that Mr. Adkison's conduct was "neither 'coerced' nor 'significantly encouraged'" by the police. <u>Id.</u>

The undersigned concurs with the analysis and factual findings of the Kentucky Supreme Court. <u>Miranda</u> does not reach purely private conduct, and the Kentucky courts found that Mr. Adkison's actions were not the result of government coercion, nor did they stem from state orders or regulations. <u>Id.</u> "[I]t is clear that <u>Miranda</u> does not govern interrogation by private citizens acting on their own. This covers such instances as where the defendant was questioned by the victim, an arresting private citizen, a friend, a relative, or a newspaper reporter." LaFave, <u>Criminal Procedure</u>, § 6.10(b), (4th Ed. 2004). The Supreme Court has held that a <u>Miranda</u> violation did not occur when a defendant's wife elicited statements while speaking with him in the presence of police officers. <u>Arizona v. Mauro</u>, 481 U.S. 520 (1987). In <u>Mauro</u>, a police officer was in the room recording the conversation between the defendant and his wife, and the statements were subsequently used in court. The Court held that "[o]fficers do not interrogate a suspect simply by hoping that he will incriminate himself." <u>Id.</u> at 529.

---

[5] The Kentucky Supreme Court addressed cases where an individual's conduct was pursuant to court orders or government regulation, such as <u>Estelle v. Smith</u>, 451 U.S. 454 (1981), as well as situations where government actors exercised enough coercion on the private party that the government was held responsible for that party's subsequent conduct. <u>United States v. Garlock</u>, 19 F.3d 441 (8th Cir. 1994).

In the present case, as in Mauro, the actions of Mr. Adkison were purely private and do not implicate Miranda. As stated by the Kentucky Supreme Court, "[Detective] Welch was not required to bar the jailhouse doors simply because he knew that a member of [Petitioner's] family intended to induce him to confess. And, when Adkison expressed his desire to share information relevant to the murder investigation, Welch was not required to refuse to listen." Adkins, 96 S.W.3d at 791-92. The alleged violation of Miranda does not afford the Petitioner a basis for habeas relief.

**D.      Petitioner's Fourth Amendment Claim Cannot be Reviewed by Federal Habeas Court**

The Petitioner argues that his conviction should be overturned because the state courts should have suppressed statements that were made as a result of an allegedly illegal stop and frisk. [R. 1, Memo. at 21-26]. This argument was rejected by the Kentucky Supreme Court, which held that Detective Welch had reasonable suspicion to stop the Petitioner at the Colley Motel in order to attempt to conduct a frisk for weapons. Adkins, 96 S.W.3d at 786-88. In the present action, the Respondent argues that habeas review of this claim is barred because the matter has been fully reviewed and litigated in the state courts. [R. 10, at 13-15].

The Respondent asserts that this Court may not review the Petitioner's Fourth Amendment argument in the present case. The Respondent's argument is based upon the rule set forth in Stone v. Powell, 428 U.S. 465 (1976):

> [W]e conclude that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. In this context, the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force.

Id. at 494-95. As evidenced by the language above, the Supreme Court is particularly concerned with the societal costs associated with federal habeas review of Fourth Amendment exclusionary rule

17

issues. The Court noted that the exclusionary rule "discourage[s] law enforcement officials from violating the Fourth Amendment by removing the incentive to disregard it." Id. at 492. In the case of federal habeas review of Fourth Amendment claims, the Court found "the additional contribution, if any, of the consideration of search-and-seizure claims of state prisoners on collateral review is small in relation to the costs." Id. at 493.

The rule of Stone v. Powell has been described as a "'prudential' decision, based in large part on the fact that the exclusionary rule 'is not a personal constitutional right.'" DeLisle v. Rivers, 161 F.3d 370, 380 (6th Cir. 1998) (en banc) *citing* Withrow v. Williams, 507 U.S. 680, 686-87 (1993). Though the Supreme Court and Sixth Circuit have been hesitant to extend Stone beyond its boundaries, Stone remains binding precedent as to the availability of the Fourth Amendment as a basis for habeas relief. See, e.g. Jennings v. Rees, 800 F.2d 72, 76 (6th Cir. 1986); Machacek v. Hofbauer, 213 F.3d 947, 952 (6th Cir. 2000). Stone v. Powell limits federal habeas review to whether the state provided "a full and fair opportunity to litigate [the] Fourth Amendment claims." Seymour v. Walker, 224 F.3d 542, 553 (6th Cir. 2000).

As this Court is bound by the rule of Stone, any inquiry in this case is limited to whether the Petitioner was granted a full and fair opportunity to litigate his Fourth Amendment claim in the Kentucky courts. The Petitioner filed a motion to suppress in state court, which was denied. The Petitioner properly appealed this denial and litigated his Fourth Amendment argument before the Kentucky Supreme Court. Adkins, 96 S.W.3d at 786-88. As the Petitioner's argument was litigated before, and ruled upon by, the highest court in Kentucky, the Petitioner has been granted a full and fair opportunity to litigate his Fourth Amendment claim. Gilbert v. Parke, 763 F.2d 821, 824 (6th Cir. 1985). As the Petitioner's Fourth Amendment argument was fully and fairly litigated in state

court, this Court is precluded from making further inquiry into the merits of the Fourth Amendment claim. The Petitioner's Fourth Amendment argument does not provide grounds for issuance of a writ of habeas corpus.

## E.    Evidentiary Errors

The Petitioner makes several arguments based on erroneous applications of state evidentiary law. [R. 1, Memo. at 27-38]. The Petitioner's arguments focus on the allegedly erroneous admission of his prior bad acts, as well as the improper admission of photographs that he claims were "immaterial and solely designed to create passion and prejudice." [Id. at 32]. The Respondent counters that the alleged errors of state law are insufficient to warrant federal habeas relief. [R. 10 at 15-20].

A federal court reviewing a state conviction must defer to the decision of the state courts regarding the application of state law.  The Supreme Court has held that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). This Court cannot reexamine the findings of the Kentucky Supreme Court to determine whether the admission of the evidence violated Kentucky law, as "the views of the state's highest court with respect to state law are binding on the federal courts." Wainwright v. Goode, 464 U.S. 78, 84 (1983) (per curiam).

The Supreme Court has long adhered to the position that "a mere error of state law is not a denial of due process." Engle v. Isaac, 456 U.S. 107, 121 n.21 (1982) (internal quotations and citations omitted). The reason for this rule is simple, "if the contrary were true, then every erroneous decision by a state court on state law would come to this Court as a federal constitutional question." Id.  Due to the limited nature of federal habeas review, an erroneous application of state law will

19

only provide the basis for federal habeas relief "under the most unusual circumstances." Bagby v. Sowders, 894 F.2d 792, 795 (6th Cir. 1990) (en banc). An erroneous application of state law will only afford a basis for a writ of habeas corpus where the error in application "constitute[s] a fundamental defect which inherently resulted in a complete miscarriage of justice or exceptional circumstances [exist] where the need for the remedy afforded by the writ of habeas corpus is apparent." Little v. Crawford, 449 F.3d 1075, 1083 (9th Cir. 2006) (internal citation omitted); see also Short v. Garrison, 678 F.2d 364, 369 (4th Cir. 1982). When analyzing evidentiary errors, such as those at issue in the case *sub judice*, the specific question addressed is whether any of the alleged errors of state law were so serious that the trial became "so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." McAdoo v. Elo, 365 F.3d 487, 494 (6th Cir. 2004), *citing* Estelle, 502 U.S. at 69-70. The types of errors that "violate 'fundamental fairness' have been defined 'very narrowly.'" Beuke v. Houk, 537 F.3d 618, 640 (6th Cir. 2008) *citing* Dowling v. United States, 493 U.S. 342, 352 (1990).

In compliance with the limited nature of federal habeas review regarding state law issues, this Court will determine whether the admission of the challenged evidence caused the trial to be "so fundamentally unfair" that they deprived the Petitioner of his due process rights under the Fourteenth Amendment. McAdoo, 365 F.3d at 494.

(1) *Admission of Past Bad Acts*

The first evidentiary error alleged by the Petitioner is that the trial court violated his due process rights by permitting introduction of evidence regarding prior bad acts. [R. 1, Memo. at 27-31]. Specifically, the Petitioner alleges that it was improper to permit introduction of evidence regarding the drugs and drug paraphernalia located in his hotel room, as well as introduction of the

20

fact that he gave police a false name when they confronted him at the Colley Motel.[6] [Id. at 27]. The Respondent counters that the evidence was properly admitted, and that its admission does not violate the Petitioner's federal due process rights. [R. 10 at 15-18].   The Kentucky Supreme Court ruled that the evidence at issue was properly admitted under KRE 404(b) as evidence of motive and consciousness of guilt. Adkins, 96 S.W.3d 792-93.

The undersigned finds that the admission of the Petitioner's prior bad acts did not violate the Petitioner's federal due process rights. The admission of prior bad acts does not automatically run afoul of due process. See e.g., Estelle, supra 502 U.S. at 67-70. Admission of the evidence does not violate due process simply because the evidence is inflammatory or weighs against the defendant; a due process violation only occurs where the admission of the evidence is "so *unfairly prejudicial* that it offends a principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Bey v. Bagley, 500 F.3d 514, 521 (6th Cir. 2007) (internal quotation and citation omitted).

The admission of the Petitioner's prior bad acts in this case did not unfairly prejudice the Petitioner, nor can it be said that it offended any fundamental principle of justice. Courts routinely permit evidence that is extremely inflammatory, so long as there is a permissible purpose for its admission. For example, in Clark v O'Dea, 257 F.3d 498 (6th Cir. 2001), the trial court permitted introduction of evidence that the petitioner therein was involved in satanic practices. Id. at 500-01.

---

[6] The Petitioner's argument focuses on the fact that the Kentucky Supreme Court improperly applied Kentucky law in permitting the introduction of the evidence. As noted *supra*, the Kentucky Supreme Court's finding that the evidence was properly admitted under KRE 404(b) is not reviewable. Wainwright v. Goode, 464 U.S. 78, 84 (1983). This Court's review is limited to whether the admission of the evidence rises to the level of a federal due process violation.

In that case, the Kentucky Supreme Court ruled that the evidence was admissible under KRE 404(b) as evidence of motive. Clark, 257 F.3d at 502-03. In the present case, the Kentucky Supreme Court found that the evidence was properly admitted as evidence of motive and consciousness of guilt. Adkins, 96 S.W.3d at 792-93.The Petitioner does not cite any cases, nor can this Court locate any, holding that the admission of such evidence to show motive or consciousness of guilt constitutes a violation of due process. Bey, 500 F.3d at 522-23.

The admission of the Petitioner's prior bad acts does not violate due process, and does not afford a basis for federal habeas relief.

(2) *"Exploiting Pain and Suffering of Victim"*

The Petitioner argues that his due process rights were violated when the trial court permitted statements and testimony that were "immaterial and solely designed to create passion and prejudice." [R. 1, Memo. at 32]. Specifically, the Petitioner alleges it was error to permit the following: (1) statements that the victim was a "piller [sic] of the community" and had three grandchildren; (2) "completely irrelevant" statements about the victim's health prior to his death; (3) photograph of the victim with the Petitioner when the Petitioner was much younger; (4) photograph of the victim with his grandchildren; (5) testimony regarding the emotional state of the victim's family following the victim's death. [Id. at 32-35]. The Petitioner contends that the nature of these statements had the effect of "glorifying the victim and sensationalizing his suffering" and that this "place[d] an impermissible pressure on the jury to return a verdict against the [Petitioner]." [Id. at 32-33]. The Respondent argues that the admissibility of the evidence is a matter of state law, improper for federal habeas review, and that the admission of the evidence was not "contrary to or an unreasonable application of established United States Supreme Court precedent." [R. 10 at 18-20].

The Kentucky Supreme Court held that the admission of this evidence did not deprive the Petitioner of a fair trial. Adkins, 96 S.W.3d at 794. Citing numerous Kentucky cases, the court noted: "We have held many times that life photographs and testimony concerning a victim are admissible to remind the jury that the victim was once a living person and not just a statistic. The testimony and pictures presented here were admissible for this purpose." Id. (internal citations and punctuation omitted). The court also stated that the picture of the victim with the Petitioner was admissible to show the long-term relationship that existed between the two. Id.

The Petitioner's argument does not afford him relief in the present case. A federal habeas court is "severely limited in [its] ability to grant federal habeas relief because of a state court evidentiary ruling." Beuke v. Houk, 537 F.3d 618, 640 (6th Cir. 2008). The Petitioner's claims regarding the prejudicial nature of the admitted statements and testimony do not state a claim for federal relief. Though never ruling directly on the issue before this Court, the Supreme Court has held that the Constitution permits the admission of victim-impact statements during the sentencing phase of a capital trial. Payne v. Tennessee, 501 U.S. 808 (1991). Lower courts have expanded the holding of Payne to the guilt phase of a trial, as well as sentencing. See e.g., Beuke, *supra* at 640; Hicks v. Collins, 384 F.3d 204, 222 (6th Cir. 2004). The facts of the case *sub judice* do not reveal the exceptional types of evidentiary errors that would permit this Court to issue a writ of habeas corpus. As no Supreme Court precedent forbids the admission of victim-impact evidence during the guilt phase of a trial, and the admission of the evidence did not otherwise render the trial fundamentally unfair, the Kentucky Supreme Court's decision regarding the evidence was neither contrary to, nor an unreasonable application of, clearly established federal law.

(3) *Admission of Crime-Scene & Autopsy Photographs*

The Petitioner's final argument regarding evidence presented at trial is based on the allegedly erroneous introduction of crime scene and autopsy photographs. [R. 1, Memo. at 36-38]. The Petitioner states that the use of the color photographs from the crime scene and autopsy was impermissibly inflammatory. [Id.]. The Petitioner claims this constitutes reversible error. The Respondent contends, as with the evidence discussed in Sec. E, (2) *supra*, that the Petitioner's argument is based on Kentucky law, and that the Kentucky Supreme Court's decision was not contrary to federal law. [R. 10 at 18-20].

The Kentucky Supreme Court held that the admission of the photographs of the victim's corpse was not error. Adkins, 96 S.W.3d at 794-95. In order to admit the photographs at trial, the trial court made a determination that the probative value of the photographs was not substantially outweighed by their prejudicial effect. Id. at 795. After examining relevant case law, the Kentucky Supreme Court held that the admission of the photographs was not error, since the body had not been materially altered by an extraneous force. According to the court, "the admittedly gruesome condition of the victim's body was caused solely by the blows inflicted during the commission of the crime." Id. at 795.

A federal habeas court is not empowered to reconsider state evidentiary rulings based on state law. Rather, the Petitioner must "demonstrate that the state court's conclusion - that the admission of the challenged evidence did not violate his due process rights - was unreasonable, as those rights have been articulated by the Supreme Court." Frazier v. Huffman, 343 F.3d 780, 789 (6th Cir. 2003). Due process would provide relief to the Petitioner if evidence was introduced that rendered the trial fundamentally unfair. Id.

24

The admission of three photographs which, though admittedly grotesque, the Kentucky Supreme Court found to accurately depict the victim's injuries, did not render the trial so fundamentally unfair that it constitutes a violation of the Petitioner's due process rights. Courts regularly permit the prosecution to introduce photographs which depict the victim's injuries. See e.g., Frazier, *supra*, at 789; Biros v. Bagley, 422 F.3d 379, 391 (6th Cir. 2005) (trial court admitted nineteen photographs of victim's injuries); Willingham v. Mullin, 296 F.3d 917, 928-29 (10th Cir. 2002) (admission of twenty-two photographs of victim's body). The Kentucky Supreme Court's decision regarding the admissibility of this evidence was not contrary to, or an unreasonable application of, clearly established federal law.

## F.   Sufficiency-of-the-Evidence

The Petitioner next argues that there was insufficient evidence presented to support his conviction, and that the trial court should have granted him a directed verdict of acquittal. [R. 1, Memo. at 39-41]. The Respondent replies that there was sufficient evidence to support the conviction. [R. 10 at 20-22]. The Kentucky Supreme Court rejected the Petitioner's sufficiency-of-the-evidence claim on direct appeal:

> Thus, there was evidence that (1) the victim was expecting Appellant on the night of the murder; (2) Appellant was absent from the mobile home he shared with Caudill for two to three hours on the night of the murder; (3) Appellant admitted being on Roberts's property that night; (4) the victim was well acquainted with Appellant and would not have opened his door clad only in underwear unless the visitor was a male with whom he was well acquainted; (5) Appellant had cocaine and funds to purchase a motel room when he returned home that night; (6) the clothes Appellant wore that night were stained with the victim's blood; (7) Appellant's military-style brass belt buckle was found on a belt on the blood-stained jeans in Caudill's vehicle with the ratchet missing; (8) a ratchet from a military-style brass belt buckle similar in appearance to Appellant's buckle was found at the crime scene; (9) the victim's shotgun and billfold were missing and the billfold was found discarded along the route Appellant admitted traveling to Wheelwright on the night of the murder and the morning after; and (10) Appellant told his brother that "I might have done it." This

25

evidence was sufficient to support the conviction.

Adkins, 96 S.W.3d 786 (internal citation omitted).

The inquiry in a sufficiency-of-the-evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The standard announced in Jackson "does not permit a court to make its own subjective determination of guilt or innocence." Id. at 320, n.13. The presumption of correctness given to state-court factual findings applies to sufficiency-of-the-evidence claims, Loveday v. Davis, 697 F.2d 135 (6th Cir. 1983), and the undersigned will accept that the facts underlying the Petitioner's conviction were accurately recited by the Kentucky Supreme Court.

Viewing the facts of the case in the light most favorable to the prosecution, it is abundantly clear that there was sufficient evidence presented to permit the jury to have found guilt beyond a reasonable doubt. It is not the province of a federal habeas court to resolve conflicts in the testimony, or to weigh the evidence, but merely to determine whether the evidence was sufficient to support a conviction. Herrera v. Collins, 506 U.S. 390, 400-02 (1993). The sufficiency-of-the-evidence inquiry "does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." Id. at 402. Given the evidence recited by the Kentucky Supreme Court, the undersigned concurs with the Kentucky Supreme Court's decision that there was sufficient evidence to support the Petitioner's conviction.

## G.    Ineffective Assistance of Counsel

The final claims presented by the Petitioner allege that he received ineffective assistance of counsel. [R. 1, Memo. at 42-58]. The Petitioner lists five specific errors of trial counsel which he

claims should result in reversal: (1) failure to obtain expert witnesses; (2) counsel did not permit Petitioner to testify at trial; (3) failure to effectively prepare for trial and effectively cross-examine witnesses; (4) an actual conflict of interest existed between Petitioner and his appointed attorney; (5) failure to object to introduction of habit evidence regarding the victim. [Id.].

As an initial matter, the record reveals that some of these issues were rejected at the state trial court level on procedural grounds, and thus may be subject to procedural default. A review of the Kentucky Court of Appeals' opinion shows that the Kentucky trial court refused to address two of the issues above, namely, the failure to obtain experts and the alleged conflict of interest. [R. 10, Appx. 13 at A189]. The Kentucky Court of Appeals addressed this by stating, "[e]ven if the trial court erred by deeming them waived, [the grounds asserted] do not entitle Adkins to relief." [Id. at A191]. The court then proceeded to analyze the issues on the merits, and determined that they did not constitute ineffective assistance of counsel. [Id. at A191-A193]. Where the state court "did not expressly rely on a procedural deficiency, then a federal court may conduct habeas review." Baze v. Parker, 371 F.3d 310, 320 (6th Cir. 2004) *citing* Caldwell v. Mississippi, 472 U.S. 320, 327 (1985). As the Kentucky Court of Appeals addressed the merits of the claim, and the Respondent does not assert that any procedural default occurred [R. 10 at 1], the undersigned will address all grounds on the merits.

The general test for ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984). In order to prove that defense counsel's performance was so deficient that a defendant's conviction should be reversed, a defendant must show two things: first, that defense counsel's "representation fell below an objective standard of reasonableness," Id. at 688, and second, that "there is a reasonable probability that but for counsel's unprofessional errors, the result of the

27

proceeding would have been different." Id. at 694. However, in order to succeed on a habeas corpus

claim for ineffective assistance of counsel, AEDPA requires the Petitioner to show that the Kentucky

Court of Appeals' decision against the Petitioner was an "objectively unreasonable" application of

Strickland. Bell v. Cone, 535 U.S. 685, 699 (2002). The Petitioner's ineffective assistance of counsel

arguments will be examined to determine whether the Kentucky Court of Appeals' decision was

contrary to, or an unreasonable application of, Strickland and its progeny.

(1) *Failure to Obtain Expert Witnesses*

The first argument asserted by the Petitioner is that defense counsel should have obtained the

services of several expert witnesses for the defense. [R. 1, Memo. at 42-46]. Specifically, the

Petitioner argues that counsel should have obtained a blood-splatter expert, a "psychologist with

training in the field of false confessions," and a DNA expert. [Id.]. The Respondent contends that

the Kentucky Court of Appeals correctly applied Strickland, and that the Petitioner's claims are "too

speculative to entitle him relief." [R. 10 at 23].  The Kentucky Court of Appeals addressed this claim

as follows:

> In Mills v. Commonwealth, [170 S.W.3d 310 (Ky. 2005)], our Supreme Court
> rejected a similar claim that defense counsel should have retained a mental
> health expert to explore the possible effects of abuse during the defendant's childhood. The
> Court explained that RCr 11.42 requires the movant to assert specific, known facts
> which justify relief. A speculative claim "that certain facts *might* be true, in essence
> an admission that Appellant does not know whether the claim is true, cannot be the
> basis for RCr 11.42 relief." [Mills] at 328. Adkins's claims are similarly speculative
> in that he does not allege that counsel failed to discover any specific fact, only that
> she *might* have discovered useful facts had she enlisted additional experts. As Mills
> indicates, that sort of speculative allegation is not enough.

[R. 10, Appx. at A191].[7]

---

[7] On January 22, 2009, Mills was overruled in part by the Kentucky Supreme Court in
Leonard v. Commonwealth, --- S.W. 3d ---, 2009 WL 160422 (Ky. 2009). The Leonard case

Courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. The Kentucky Court of Appeals correctly characterized the Petitioner's claims as being too speculative to show ineffective assistance of counsel. The Petitioner's argument fails to meet the test set forth in Strickland, as the Petitioner clearly has not shown any prejudice from his counsel's failure to call these expert witnesses. In order to establish prejudice, the Petitioner must present "testimony to establish that an expert witness could have been obtained to testify favorably for him on [the relevant] issue." See Malcum v. Burt, 276 F. Supp. 2d 664, 682 (E.D. Mich. 2003). The Petitioner's claims are merely bare assertions that experts *might* exist who would testify in his favor; allegations unsupported by any facts are insufficient to establish that counsel was ineffective under Strickland.

The Kentucky Court of Appeals determined that Petitioner's claims regarding expert witnesses were too speculative to meet the requirements for ineffective assistance of counsel under Strickland. This decision is neither contrary to, nor an unreasonable application of, clearly established federal law, and it affords Petitioner no relief.

(2) *Deprivation of Right to Testify*

The Petitioner's second ineffective assistance of counsel argument is that defense counsel did not inform him of his right to testify, and refused to allow him to testify at trial. [R. 1, Memo. at 47-49]. This allegation is clearly refuted by the factual findings of the Kentucky courts, including Petitioner's own admissions. During an 11.42 hearing at the trial court level, the Petitioner testified that he pleaded with counsel "to permit him to testify that he simply could not remember the events"

---

overruled Mills, and six other cases, only as to "procedural bar" issues, Id. at *4-5, and does not affect the validity of the analysis on the issue relevant to the present case.

leading up to the crime. [R. 10, Appx. at A187-A188]. He further testified that counsel strongly advised him against that approach. [Id. at A188]. At the hearing, Petitioner testified that counsel "told him 'it was ultimately his decision' whether or not to testify, but she advised against it." [R. 10, Appx. at A132-A133 "Opinion of Pike Circuit Court"]. Trial counsel also testified at the 11.42 hearing, and she acknowledged that she advised the Petitioner not to testify, but had informed him that it was his right to do so if he desired. [Id.].

"A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)[.]" Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). The Petitioner's current argument completely ignores his admissions during the 11.42 hearing, and he again claims that "defense counsel never informed Petitioner Adkins that the decision about whether he would testify was his to make." [R. 1, Memo. at 47]. Other than contradicting his sworn testimony from the RCr 11.42 hearing, the Petitioner presents no evidence to show that the factual findings of the state court are objectively unreasonable based on the evidence presented. As the Kentucky courts have made a factual finding that Petitioner's counsel informed him of his right to testify, this argument is totally without any factual basis or legal merit, and is rejected.

(3) *Failure to Adequately Prepare for Trial & Cross-Examine Witnesses*

The Petitioner's next argument is that trial counsel was ineffective by failing to prepare adequately for trial. [R. 1, Memo. at 50-52]. Petitioner's argument focuses primarily on counsel's inadequate cross-examination of the Petitioner's brother and another witness. [Id.]. The Respondent replies that the Kentucky Court of Appeals correctly analyzed this claim, and that their decision was

not contrary to, or an unreasonable application of, <u>Strickland</u>. The Kentucky Court of Appeals addressed the Petitioner's contentions regarding his brother by stating:

> Adkins does not deny that he told his brother, just as he maintained at the RCr 11.42 hearing, that he could not remember the crime, but he was mentally distraught and could have done it. Adkins apparently contends that at trial, counsel should have elicited testimony from Adkison making it clearer that the supposed "confession" was not so much an admission of guilt but an admission of the bad mental state into which Adkins had fallen. Even if counsel's cross-examination could be deemed lacking, however (though we do not suggest that it was), it is clear that putting a slightly different spin on Adkison's testimony is not reasonably likely to have had any effect on the trial's outcome. As noted above, Adkison's testimony was only one small piece of a large and compelling case against Adkins. Altering that piece or even removing it, is not reasonably likely to have changed the result.

[R. 10, Appx. at A192]. At the RCr 11.42 hearing, Petitioner also conceded "that counsel and her investigator interviewed everyone connected with the crime and everyone he referred them to." [<u>Id.</u> at A190].

The Kentucky Court of Appeals did not engage in the first prong of the <u>Strickland</u> analysis, the "competence" prong, but simply engaged in the "prejudice" analysis. Under clearly established Supreme Court precedent, a court need not "address the question of competence, however: 'if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice." <u>Baze v. Parker</u>, 371 F.3d 310, 321 (6th Cir. 2004) *citing* <u>Strickland</u>, 466 U.S. at 697. When conducting the prejudice analysis, courts must be mindful that "defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation." <u>Mickens v Taylor</u>, 535 U.S. 162, 166 (2002).  The Kentucky Court of Appeals determined that even if cross-examination had been able to put a "slightly different spin" on Adkison's testimony, "it is not reasonably likely to have changed the result" of the trial. [R. 10, Appx. at A192]. To find ineffective assistance of counsel, a court must find "a reasonable probability that, but for counsel's unprofessional errors, the result of

31

the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. The Kentucky Court of

Appeals' decision correctly identified the standard, and its application of <u>Strickland</u> was neither

contrary to, nor an unreasonable application of, clearly established federal law. This argument does

not provide grounds for issuing a writ of habeas corpus.

(4) *Conflict of Interest*

The Petitioner's fourth claim for ineffective assistance of counsel is that his trial counsel was

operating under a conflict of interest. [R. 1, Memo. at 53-56]. He states that this conflict was caused

because, many years before the trial, his mother had an affair with trial counsel's husband, and that

trial counsel's continued anger over the affair affected her representation of the Petitioner. [<u>Id.</u>].

Citing the Kentucky Court of Appeals' decision, the Respondent contends that Petitioner was unable

to show any "specific inadequacy in trial counsel's performance related to the alleged conflict." [R.

10 at 25-26].

The Kentucky Court of Appeals found as follows:

Adkins contends that a conflict of interest - counsel's animosity toward Adkins's
mother - interfered with counsel's efforts on his behalf. Adkins hopes to benefit from
the rule according to which prejudice will be presumed where it is shown that
counsel's performance was adversely affected because he or she actively represented
conflicting interests. In <u>Mickens v. Taylor</u>, [535 U.S. 162] (2002), however, the
United States Supreme Court strongly suggested that the sort of ethical conflict
Adkins alleges does not give rise to the presumption of prejudice that arises in cases
of conflicted multiple representations. Even if the presumption were to apply, Adkins
is still obliged to show that counsel's performance was adversely affected by the
conflict, and he has failed to make that showing. As discussed above, counsel's
investigation and trial strategy were adequate under the Constitution and do not
suggest any diversion of trial counsel's loyalty.

[R. 10, Appx. at A192-A193]. The Kentucky Court of Appeals determined that, even assuming an

ethical conflict existed, it did not affect counsel's representation of the Petitioner. [R. 10, Appx. at

A192-A193]. The record does not contain any evidence that the alleged conflict of interest actually

32

existed, as no testimony on the issue was adduced at the RCr 11.42 hearing in Pike Circuit Court. [Id. at A132]. Presuming, *arguendo*, that these wholly unsubstantiated allegations are correct, and that a conflict of interest existed, the Kentucky Court of Appeals determined that any alleged conflict had not affected trial counsel's representation of the Petitioner.

The Kentucky Court of Appeals correctly identified Mickens v. Taylor, 535 U.S. 162 (2002), as the most recent case in the controlling line of Supreme Court precedent. See also Cuyler v. Sullivan, 446 U.S. 335 (1980). Under Mickens and Sullivan, prejudice to a defendant will be presumed *if* the defendant can show that an ethical conflict adversely affected counsel's representation of the defendant. Mickens, 535 U.S. 162. The Kentucky Court of Appeals determined that the alleged conflict of interest did not adversely affect trial counsel's representation of the Petitioner. [R. 10, Appx. at A192-A193].Other than restating the arguments that have already been rejected, *supra*, the Petitioner is unable to make any showing of how this alleged conflict of interest adversely affected counsel's representation.

The Court finds the Petitioner's arguments of deficient performance to be unavailing. The Petitioner himself "conceded that counsel and her investigator interviewed everyone connected with the crime and everyone he referred them to" as well as investigating Petitioner's psychiatric status. [Id. at A190]. Trial counsel's performance was not adversely affected by the alleged conflict of interest, and this Court can not, therefore, presume that any prejudice occurred to the Petitioner. The Kentucky Court of Appeals' decision on this matter was neither contrary to, nor an unreasonable application of, clearly established federal law.

(5) *Failure to Object to Habit Evidence*

The Petitioner's final argument is that trial counsel erred by failing to object to the

33

Commonwealth's introduction of evidence regarding the habits of the victim.[8] [R. 1, Memo. at 57-58]. The Respondent states that counsel's decision not to object to the admission of habit evidence was reasonable trial strategy, and that the Kentucky Court of Appeals' decision on the issue was appropriate under Strickland. [R. 10 at 26-27].

The Kentucky Court of Appeals addressed this argument by noting that trial counsel had testified at the RCr 11.42 hearing, and testified that her decision regarding the habit evidence was part of her trial strategy "of trying to show that the victim's habits suggested that he had opened his door that night to someone other than Adkins." [R. 10, Appx. at A190]. Trial counsel's decision to not object to habit evidence was a tactical decision, based on her overall trial strategy. As Petitioner has admitted, "counsel and her investigator interviewed everyone connected with the crime and everyone he referred them to." [Id.]. The Supreme Court sets a tough standard for challenging the strategic decisions of trial counsel: "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690. The Kentucky Court of Appeals determined that trial counsel's decision not to object to the habit evidence was reasonable. [R. 10, Appx. at A190-A191].

The Kentucky Court of Appeals decision regarding trial counsel's decision not to object to the admission of habit evidence was neither contrary to, nor an unreasonable application of, clearly established federal law. Neither this, nor any other ground asserted, entitles the Petitioner to relief on the basis of ineffective assistance of counsel.

---

[8] Subsequent to the Petitioner's trial and conviction, the Kentucky Rules of Evidence were amended to permit the introduction of habit evidence. See Ky. R. Evid. 406 (effective July 1, 2006).

34

## VI. CONCLUSION

Having considered the matter fully, and for the reasons stated above, it is hereby RECOMMENDED that the Petition for Writ of Habeas Corpus [R. 1] be DENIED and that this action be dismissed with prejudice.

Specific objections to this Report and Recommendation must be filed within ten (10) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749-750 (E.D. Ky. 2002). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within ten (10) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

Signed March 12, 2009.



**Signed By:**

**_Edward B. Atkins_** _EBA_

**United States Magistrate Judge**

35